UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:

Futter Lumber Corp.,

                       Reorganized Debtor.
--------------------------------------------------------x
Todd Duffy, Trustee for the Futter Lumber
Liquidation Trust,

                     Plaintiff,

        - against -

Bernice Futter, Ileana Futter, James Futter,
David Kirkham and Lyn Gaylord,

                   Defendants.
--------------------------------------------------------x

Chapter 11

Case No.: 09-73291-478

Adv. Pro. No.: 11-9055-478

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Anderson Kill & Olick, P.C.
*Attorneys for Plaintiff*
By: Todd E. Duffy, Esq.
Dennis J. Nolan, Esq.
1251 Avenue of the Americas
New York, New York 10020


Moritt Hock & Hamroff LLP
*Attorneys for Defendants and Bernard Futter*
By: Leslie A. Berkoff, Esq.
Lee J. Mendelsohn, Esq.
Theresa A. Driscoll, Esq.
400 Garden City Plaza
Suite 202
Garden City, New York 11530


Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the Defendants' Motion to Dismiss the complaint as amended in this adversary proceeding. This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. § 1409. This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (F), (H) and (O) and 11 U.S.C. §§ 544, 547, 548, 550 and 551 and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The following constitutes the Court's findings of fact and conclusions of law as mandated by Bankruptcy Rule 7052.

## FACTS

The Debtor was a lumber wholesaler and distributor. It was a privately held corporation owned by Bernard Futter, the Debtor's President and Director; Bernice Futter, his wife; Bernard Futter as Trustee f/b/o the Bernard Futter Trust; and Kenneth Futter as Trustee of the Ileana Futter Trust, the David Futter Trust, and the James Futter Trust. Kenneth Futter was the Debtor's Secretary and Treasurer and was also a Director. An involuntary chapter 7 proceeding was commenced against the Debtor on May 8, 2009 (the "Petition Date"). The case was converted to a chapter 11 case on June 11, 2009.

The Debtor had three non-debtor affiliates – Futter Trading LLC, Futter West LLC and Global Wood LLC (collectively, the "Affiliates"), which operated in markets located in different regions of the United States. The ownership interests in the Affiliates were held by Bernard Futter, and his children – David Futter, James Futter and Ileana Futter, the latter two being Defendants in this adversary proceeding. The other Defendants – Bernice Futter; Lyn Gaylord, the wife of Kenneth Futter; and David Kirkham, a vice president of the Debtor – were not equity owners of the Affiliates. During the course of its operations, the Debtor financed the purchase of

1

inventory on behalf of itself and the Affiliates and charged the Affiliates interest on the financing it extended to them.  In addition, the Debtor performed other general and administrative services on behalf of the Affiliates, including payment of medical insurance costs and general management services for which it charged a management fee.  As of the Petition Date, the Debtor's books and records reflected approximately $4.5 million in receivables due to the Debtor from the Affiliates relating to the foregoing services and financial accommodations.  The Affiliates are no longer operating and have undertaken a complete wind down of their businesses.  The Affiliates held approximately $1.3 million from the wind down of their businesses.  The $1.3 million was turned over by the Affiliates to the Debtor to help fund the Debtor's liquidating chapter 11 plan (the "Plan").

The Debtor's Plan was confirmed in this bankruptcy case pursuant to an order dated June 9, 2010 (the "Confirmation Order").  Pursuant to Article 11 of the Plan and the Confirmation Order, the Court retained jurisdiction for the purpose of hearing and determining, *inter alia*, any and all controversies that may arise in connection with the interpretation or enforcement of the Plan, and any and all causes of action which may exist on behalf of the Debtor.

Upon the effective date of the confirmed Plan, the Official Committee of Unsecured Creditors ("Creditors Committee") was dissolved.  The Plaintiff, formerly counsel to the Creditors Committee, was appointed as the Liquidation Trustee (the "Trustee") of a liquidation trust (the "Liquidation Trust") that was established pursuant to the Plan and a liquidation trust agreement entered into post-confirmation between the Debtor's bankruptcy estate and the Trustee (the "Liquidation Trust Agreement").

The Liquidation Trust was created, *inter alia*, to administer and reduce to cash all of the

2

Debtor's property, rights and interest; to resolve all claims and causes of action; and to make distributions for the benefit of holders of allowed claims against the Debtor (the "Beneficiaries"). All of the Debtor's "Causes of Action" were to be fully preserved and retained exclusively by the Liquidation Trust.  Pursuant to Article 1.1 of the Plan, "Causes of Action" are defined to mean "any and all rights or claims that the Debtor has or may have against any third party including, without limitation, all Avoidance Actions. . . ."  Plan, at 5.  "Avoidance Actions" include "any claim, right or causes of action under Chapter 5 of the Bankruptcy Code; all fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in creditors rights to avoid, rescind, or recover on account of transfers; all preference laws and the New York Debtor & Creditor Law."  *Id.*, at 4.

The Plan also provides for the creation of the Liquidation Trust Oversight Committee (the "Oversight Committee") to advise the Trustee and to review compensation and reimbursement requests of the Trustee and his professionals. The Oversight Committee shall consist of a member selected by the Debtor, a member selected by the Creditors Committee, and, if practicable, a member jointly selected by the Debtor and the Creditors Committee.  The Debtor selected Bernard Futter to be its representative on the Oversight Committee and the Creditors Committee selected one of its members, Jason Lowe of Hampton Affiliates.  No third member was jointly selected to the Oversight Committee.

Article 8.4 of the Plan also provided for general releases whereby creditors agreed to release, waive or discharge, *inter alia*, all claims and causes of action based on any act, omission, transaction or other occurrence involving the Debtor in connection with, or in contemplation of, the bankruptcy case that such creditor has or may have against the Debtor and

the bankruptcy estate, the officers and directors of the Debtor, the Creditors Committee and each member thereof, and the professionals retained by them.  Specific releases were given to Bernard Futter and Kenneth Futter, as officers and directors of the Debtor, in the Plan.  As part of the consideration for the specific releases given in favor of Bernard Futter and Kenneth Futter, the general unsecured claim of Bernard Futter was reduced by $114,300 and allowed in the amount of $1,418,695 and the general unsecured claim of Kenneth Futter was reduced by $35,700 and allowed in the amount of $444,300.  Plan, at 24.

On May 9, 2011, the Trustee commenced this adversary proceeding against the Defendants by filing a complaint (the "Complaint").  Because the Defendants were either an officer, or a relative of a director or officer, of the Debtor at the time of the Debtor's bankruptcy, they are deemed insiders of the Debtor under 11 U.S.C. § 101(31) for purposes of the Bankruptcy Code.  The Trustee seeks a money judgment for damages resulting from, or relating to, certain alleged preferential transfers in the aggregate sum of $355,977.96 and fraudulent conveyances in the aggregate sum of $745,365.73 from the Debtor to or for the benefit of the Defendants under the Bankruptcy Code and New York Debtor and Creditor Law.  In addition, the Trustee seeks to (a) disallow any claims made by the Defendants against the Debtor's bankruptcy estate under 11 U.S.C. § 502 until the Defendants pay the Trustee the amount of the alleged transfers, (b) subordinate the Defendants' claims, and (c) recharacterize their claims as equity.

On July 8, 2011, the Defendants filed their motion to dismiss the adversary proceeding pursuant to (1) Rule 12(b)(6) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7012 for failure to state a claim for which relief can be granted on the basis that

4

(a) the exhibit attached to the Complaint shows payments from the Defendants to the Debtor and does not support the allegations of preferential or fraudulent transfers from the Debtor to the Defendants and (b) 11 U.S.C. § 502(d) precludes the Trustee from bringing any action against the Defendants after the deadline for objecting to claims have passed, and (2) the doctrine of res judicata (the "Motion to Dismiss").  At a hearing on the Motion to Dismiss held on August 16, 2011, the Trustee explained that the exhibit attached to the Complaint reflected payments by the Defendants that should be characterized as equity contributions to the Debtor and not loans pursuant to one of his causes of actions.  The Trustee has a separate exhibit that reflects the preferential and fraudulent transfers alleged in the Complaint that was unintentionally left out of the Complaint.  Despite this clerical error, the Trustee argued that the Defendants had sufficient notice of the nature of the causes of action and the amount at issue from the Complaint itself and from the Debtor's Statement of Financial Affairs filed in the bankruptcy case which lists some of the same preferential payments received by the Defendants from the Debtor within the one year preference period prior to the Petition Date.  After consideration of the arguments, the Court permitted the Trustee to file a motion to amend the Complaint to permit him only to substitute the exhibit to show payments made by the Debtor to the Defendants ("Motion to Amend").

On September 1, 2011, the Trustee filed his Motion to Amend the Complaint and on September 20, 2011, the Court heard arguments on the Trustee's Motion to Amend and additional arguments on the Motion to Dismiss (the "September 20th Hearing").  At the September 20th Hearing, the Court ruled that 11 U.S.C. § 502(d) did not preclude the Trustee from prosecuting the causes of action sought against the Defendants pursuant to this adversary proceeding and granted the Trustee's Motion to Amend to permit the Trustee to substitute the

correct exhibit to the Complaint.

With respect to the remainder of the Motion to Dismiss, the Defendants claim that a reading of the disclosure statement which was submitted with the proposed and subsequently confirmed Plan (the "Disclosure Statement"), permits a different interpretation than the one given to the confirmed Plan by the Trustee.  The Defendants argue that the language of the Plan and the Disclosure Statement should be read together to preclude the Trustee from bringing this adversary proceeding against the Defendants.  They allege that the Trustee never specifically reserved the lawsuit against the Defendants postconfirmation and the Trustee is precluded from raising the causes of action contained in his amended complaint (the "Amended Complaint").  In addition, the Trustee, as Creditors Committee's counsel, had the opportunity prior to confirmation to review the Debtor's financial records and that such documentation included payments to the Defendants and loans made by the Defendants to the Debtor.  Defendants then assert that the Debtor's principals, Bernard Futter and Kenneth Futter, negotiated a settlement of all claims the bankruptcy estate may have against the Defendants when the principals agreed under the Plan (a) to cause the Debtor's estate to receive $1.3 million from the Affiliates to fund the Plan and (b) to reduce the principals' claims against the estate by $150,000.  The Defendants argue that this settlement was mentioned in the Disclosure Statement and confirmed when the Plan was confirmed even though it was not referenced in the Plan and the Confirmation Order. Accordingly, the Trustee should not be permitted to commence this adversary proceeding against the Defendants in light of the negotiated settlement.  Alternatively, the Defendants argue that should the Court determine that the doctrine of res judicata does not apply and the Complaint should not be dismissed, then there was a mutual mistake on the part of the Debtor's principals

6

and all parties who voted for the Plan, including the Defendants, and the entire Plan process would need to be undone.

In response, the Trustee argues that the language in the Disclosure Statement constitutes parole evidence and the Court should not consider the Disclosure Statement because of a merger or integration provision in the Plan and the Plan itself is unambiguous. The Plan preserves all causes of action against the Defendants and does not contain any discussion of potential claims against the Defendants being resolved as a condition of the Affiliates contributing $1.3 million to the Debtor's bankruptcy estate. The $1.3 million provided by the Affiliates was to satisfy the Affiliates' $4.5 million intercompany receivable obligation to the Debtor and the Defendants did not provide any consideration for a release from any causes of action that could have been brought against them under the Bankruptcy Code or relevant state law. Specific releases set forth in the Plan were given only to Bernard Futter and Kenneth Futter in consideration of the reduction of their claims against the estate and the Plan does not include any releases of claims against the Defendants. Should the Court consider the Disclosure Statement as part of the Plan, the Trustee argues that the language of the Disclosure Statement is ambiguous and should not be used to interpret the terms of the Plan. After due consideration of all of the arguments of the parties and the relevant documents at issue, the Court finds that the Defendants' Motion to Dismiss should be denied for the reasons set forth below.

## DISCUSSION

In determining whether a complaint survives a motion to dismiss a Court must determine whether the complaint contains 'sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."' *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173

7

L.Ed.2d 868 (2009)(citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. See also, *Santaro v. Sgroi (In re Sgroi)*, 5:10-CV-357, 2010 U.S. Dist. LEXIS 100686, * 9-10 (N.D.N.Y. Sept. 24, 2010). While all factual allegations are accepted to be true in a motion to dismiss, courts need not "accept as true a legal conclusion couched as a factual allegation". *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L. Ed. 2d 209 (1986). The complaint must contain more than just a recital of the elements of a cause of action and conclusory statements. *Iqbal*, 129 S.Ct. at 1950.

The pleadings in the Amended Complaint set forth sufficient facts that the Trustee is seeking to avoid certain payments made from the Debtor to the Defendants made within six years prior to the Petition Date as constructive fraudulent transfers and certain payments within two years of the Petition Date as preferences. Especially with respect to alleged preferential transfers, the Debtor listed the payments made to the Defendants within the preferential period in its Statement of Financial Affairs filed with the Court and the Trustee sets forth the specific transfers to be avoided in the exhibit to the Amended Complaint. Rather, the Defendants argue that the Amended Complaint fails to state a claim for relief because such causes of action were not specifically reserved in the Plan and a reading of the Disclosure Statement and the Plan shows that the doctrine of res judicata applies because the causes of action have previously been resolved.

I.      *Reservation of Causes of Action.*

Pursuant to 11 U.S.C. § 1141(a), the provisions of a confirmed plan bind the debtor, any

entity acquiring property under the plan, and any creditor, whether or not the creditor's claim or interest was impaired under the plan and whether such creditor accepted the plan.  11 U.S.C. §1141(a).  A confirmed plan is treated as a binding contract.  *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (2d. Cir. B.A.P. 1998).

"As with any contract, the starting point for review of a plan is its plain language.  Unless some ambiguity is to be found within the plan itself, the Court has no basis to look beyond its text."  *In re Victory Markets, Inc.*, 221 B.R. at 303 (internal citations omitted).  In New York, "if a contract recites that all of the parties' agreements are merged into the written document, parol evidence is not admissible to vary, or permit escape from the terms of the integrated contract."  *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993); *Point Developers, Inc. v. Federal Deposit Ins. Corp.*, 921 F. Supp. 1014, 1019 (E.D.N.Y. 1996)("Where parties have reduced an agreement to an integrated writing, the parole evidence rule bars all evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the provision of the writing").  If there is some ambiguity in the Plan and the terms of a disclosure statement are considered, where a conflict exists between the plan and disclosure statement, it is the terms of the plan that controls and the disclosure statement does not have res judicata effect on the court.  *In re AOV Industries, Inc.*, 792 F.2d 1140, 1153 (D.C. 1986); *In re Bridgepoint Nurseries, Inc.*, 190 B.R. 215, 223 (Bankr. D.N.J. 1996); *In re Hiller,* 143 B.R. 263, 267 (Bankr. D. Colo. 1992).

Section 10.1 of the Plan at issue contains a merger or integration provision that provides that the Plan and the Confirmation Order, including any exhibits to the Plan, constitute the entire agreement and understanding among the parties and supersedes all prior discussions and

9

documents.  Plan, at 26.  The Plan does not contain any exhibits but the Confirmation Order

provides that "the Plan . . . and each and every provision thereof and every document *to be*

*executed pursuant thereto* be, and the same hereby is, confirmed in accordance with § 1129 of

the Bankruptcy Code." (Emphasis added).  The Trust Agreement is a document that was

executed pursuant to the Plan post-confirmation and thus, it was confirmed in accordance with

11 U.S.C. § 1129 and needs to be read together with the Plan and Confirmation Order.  Indeed,

the Trust Agreement is referenced throughout the Plan and contains all the operative provisions

that define the Trustee's authority to recover assets of the Debtor, to effectuate the terms of the

Plan and to make distributions to creditors.

      While the Defendants argue that the Disclosure Statement also constitutes a confirmation

document and should be considered binding, the Court notes that the Disclosure Statement was

executed around the same time as the Plan, but it was not a document *to be executed pursuant to*

the Plan as required by the Confirmation Order.  The Disclosure Statement is not necessary to

effectuate the terms of the Plan.  Accordingly, the Disclosure Statement cannot be deemed to be

"confirmed" pursuant to the Confirmation Order or to have the same binding effect as the Plan.

      The Plan provides in Article 4.9 that all Causes of Action, including any rights or clams

that the Debtor has or may have against any third party including, without limitation, all

Avoidance Actions, are fully preserved and shall be retained exclusively by the Liquidation

Trust."  Plan, at 15.  Defendants argue that this language in the Plan is a blanket reservation of

claims and that a specific reservation of claims against the Defendants pursuant to 11 U.S.C. §

1123(b) is required in order for the Trustee to be able to assert these causes of action against

them.

Section 1123(b) provides that "a plan may provide for retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any claim or interest."  11 U.S.C. § 1123(b)(3)(B).  The District Court for the Eastern District of New York has held that while a debtor may object to claims post-confirmation, it does so subject to the defense of res judicata if the plan contains a general but not an express reservation of the right to pursue that particular claim post-confirmation.  *In re American Preferred Prescription, Inc.*, 266 B.R. 273, 277-79 (E.D.N.Y. 2000)("APP").  In *American Preferred Prescription, Inc.*, the debtor's largest creditor objected to claims held by Hadiya, S.A. which were later assigned to Tracar (the "Hadiya Claim") and a default judgment was entered by the court which voided certain transfers to  Hadiya and subordinated Hadiya Claim under the Plan.  However, *APP* dealt with a reservation of right to object to a claim as opposed to reservation of causes of action post-confirmation and the Hadiya Claim had already been allowed as part of the plan and there was no specific notice given that the Debtor or the Trustee reserved any rights to pursue a further objection to the Hadiya Claim.  Turnover or avoidance causes of action brought by a debtor or trustee against a creditor differ from a claims objection because 11 U.S.C. § 502(d) allows such causes of action even after a claim has been allowed post-confirmation.  Section 502(d) specifically permits the disallowance of any claim as a result of an avoidance or turnover action notwithstanding the allowance of that claim under section 502(a).  11 U.S.C. § 502(d).  See also *In re Popular Club Plan, Inc.*, 395 B.R. 587, 591 (Bankr. D.N.J. 2008).  It provides a mechanism that enables a trustee to recover assets of the estate from a recipient of an avoidable transfer, unless the claimant has paid or turned over property that is the subject of the turnover or avoidance action.  *Cariolo v. Saginaw Bay Plastics, Inc. (Cambridge Indus. Holdings)*, No.

001919, 2006 WL 516764 (D. Del. Mar. 2, 2006); *TWA Inc. Post Confirmation Estate v. City and County of San Francisco Airports Commission (In re TWA Inc. Post Confirmation Estate)*, 305 B.R. 221, 226 (Bankr. D. Del. 2004).

Moreover, the failure to include a specific reservation of claims or causes of action in a plan need not be fatal so long as creditors received notice of such reservation before the plan is approved. "Although the Bankruptcy Code speaks in terms of reservations in the plan, a debtor can preserve its right to litigate claims in either the plan or the disclosure statement." *Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp.*, No. 00 Civ. 8688 (WHP), 2004 WL 1119652, *4 (S.D.N.Y. 2004)(finding that the specific reservation of right to litigate claims post-confirmation can be in the plan or the disclosure statement so long as the defendants had notice). Section 1123(b)(3) has been viewed in part as a notice provision that gives creditors notice of the debtor's intent to pursue certain claims or interests. *Harstad v. First American Bank*, 39 F.3d 989, 903 (8th Cir. 1994)(finding that neither the plan nor the disclosure statement contain any notice that the debtors will be relying upon preference actions to fund the plan much less that such actions exist or will be pursued).

Even though there is no ambiguity in the Plan, Confirmation Order and Liquidation Trust Agreement that would require a review of the Disclosure Statement, the Disclosure Statement can be helpful when read in conjunction with these other documents to determine whether creditors received reasonable notice of the terms of the Plan so long as there is no conflict with the Plan or any other confirmation document. The function of the Disclosure Statement is to ensure that there is adequate information and notice regarding the terms of the Plan, which may contain only the material, operative terms, in order to enable creditors to make

a determination as to how to vote on the Plan.

Although the Plan contains a general reservation of causes of action post-confirmation, the Disclosure Statement expressly identifies certain preferential payments received by the Defendants as potential Causes of Action reserved for possible prosecution post-confirmation notwithstanding any defenses of res judicata or collateral estoppel. The Disclosure Statement provides in pertinent part as follows:

> Identified in the Debtor's Statement of Financial Affairs at question 3(a) is a non-exclusive list of certain potential Causes of Action, which are expressly identified and preserved for possible prosecution on and after the Effective Date. The failure to list any potential or existing claims or Clauses of Action is not intended to and shall not limit the rights of the Liquidation Trustee to pursue any claims or Causes of Action not listed or identified. The Confirmation Order shall not bar the Liquidation Trustee, on behalf of the Liquidation Trust, by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, or defending any matter of Cause(s) of Action.

> Unless a Claim or Cause of Action against a Person is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Liquidation Trustee, on behalf of the Liquidation Trust, expressly reserves such Claim or Cause of Action for later adjudication (including without limitation, claims and Causes of Action not specifically identified, or which the Liquidation Trustee or debtor may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Liquidation Trustee or the Debtor at the time, or facts or circumstances which may change or be different from those which the Debtor and the Liquidation Trustee now believe to exist), and therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or Causes of Action have been released in the Plan or other Final Order.

Question 3(a) of the Debtor's Statement of Financial Affairs concerns whether there are any payments by an individual or joint debtor with respect to primarily consumer debts. As the Debtor was a corporation, this section is not applicable and there is no list in response to

question 3(a).  However, question 3 does contain a list of preferential payments by the Debtor with respect to debts that are not primarily consumer debts.  This list sets forth payments made by the Debtor to most of the Defendants within the 1 year period prior to the Petition Date which total $24,366.799.90.  Such list includes not only payments to the Defendants but also to Bernard Futter and Kenneth Futter. However, express releases were given only to Bernard Futter and Kenneth Futter in the Plan and were not given to the Defendants, which is why Bernard Futter and Kenneth Futter are not named as defendants to this adversary proceeding.

Creditors voting on the Plan, including the Defendants to the extent they hold claims as creditors, were clearly given notice in the Disclosure Statement of the transfer to the Liquidation Trust of any pending and potential causes of action, in particular, actions against the insiders for payments received from the Debtor as set forth in question 3 of the Debtor's Statement of Financial Affairs, and that the Trustee may be pursuing these causes of action.  The Disclosure Statement is consistent with the language in the Plan and Trust Agreement showing that one of the principal purposes of the Liquidation Trust is to resolve, liquidate and realize upon the Debtor's assets, including causes of action, post-confirmation.

Pursuant to Section 3.3.1 of the Trust Agreement, the Trustee is required to seek approval from the Oversight Committee prior to commencing any litigation other than objections to disputed claims or settling or disposing a cause of action where the amount in controversy exceeds $100,000. Trust Agreement, at 7.  The Trust Agreement also contemplates the possibility of the initiation of causes of action against Oversight Committee members even though these actions are not specifically reserved in the Plan.  Moreover, the preference and avoidance actions were brought within one year of the confirmation of the Plan and within the

14

statutes of limitation period so this was not a situation where due to laches the Defendants would not have anticipated any further litigation against them.  Accordingly, the causes of actions raised by the Trustee in this adversary proceeding were adequately reserved and the Defendants had notice of the possibility that preference and avoidance actions may be asserted against them post-confirmation.

II.      *Applicability of the Doctrine of Res Judicata.*

The doctrine of res judicata 'provides that when a court of competent jurisdiction has entered a final judgment on the merits of the cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."' *In re Teltronics Services, Inc.*, 762 F.2d 185,190 (2d Cir. 1985)(citing *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876)).  For the doctrine to apply to later litigation, there must have been an earlier decision that was "(1) a final judgment on the merit, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.*

An order confirming the plan is treated as a final judgment with res judicata effect.  *In re G. Ware Travelstead*, 73 Fed. Appx. 568 (4th Cir. 2003); *In re American Preferred Prescription, Inc.*, 266 B.R. at 277.  Accordingly, the Confirmation Order entered by this Court and the Confirmed Plan and the Trust Agreement, which are confirmed pursuant to the Confirmation Order, are each deemed to be a final judgment rendered by a court of competent jurisdiction and the terms thereof are binding on the Debtor, the Trustee, creditors and the Defendants.  The Court needs to determine whether there was a final resolution of claims against the Defendants

15

that was approved pursuant to the Confirmation Order and whether these claims are the same as

the causes of action asserted by the Trustee in this adversary proceeding.  "To determine whether

the causes of action are the same, [the Court must] examine whether the same transaction,

evidence and factual issues are involved in both cases." *Corbett v. MacDonald Moving Services,*

*Inc.*, 124 F.3d 82, 89 (2d Cir. 1997).

The Defendants point to language in the summary of the chapter 11 case portion of the

Disclosure Statement and argue that the Creditors Committee reviewed documents relating to (I)

the affiliates, (ii) claims held by insiders, (iii) payments to insiders, and (iv) loans made by

insiders to the Debtor and that the Creditors Committee's analysis resulted in an agreement with

the Debtor regarding the contribution of funds from the Affiliates and the reduction of claims of

Bernard and Kenneth Futter in resolution of any claims against the Defendants.  Disclosure

Statement, at 12. The Defendants then argue that

> [i]n an effort to resolve any potential claims and causes of action against the
> Affiliates *or the insiders* on a consensual basis, the Debtor's principals agreed
> under the Plan to (a) cause the Debtor's estate to receive approximately $1.3
> million held by the Affiliates (in partial satisfaction of the intercompany
> receivable) to fund distribution under the Plan, and (b) reduce the prepetition
> claims held by certain of the Debtor's officers and directors by a total of
> $150,000.

Disclosure Statement, at 13.

The Court notes that the Disclosure Statement states that the financial advisors of the

Creditors Committee were able to only review the books and records that existed at the Debtor's

office premises.  Whether the Creditors Committee did or did not make an analysis regarding

payments to insiders or took any particular action is irrelevant.  The Court can only look to the

Plan, the Confirmation Order, the Trust Agreement and under certain circumstances the

Disclosure Statement to determine what assets were actually transferred to the Trust and whether a negotiated settlement regarding the Trustee's causes of action actually exists.

The Court finds that notwithstanding the Defendants' argument that the agreement by the Debtor's principals to resolve any potential claims and causes of action against the Affiliates also included claims against the insider Defendants, the Defendants' position must fail. A review of the entire Disclosure Statement reveals that there was an agreement by the Affiliates to transfer $1.3 million to the Debtor's bankruptcy estate but this transfer was in partial satisfaction of the $4.5 million intercompany receivable owed to the Debtor, which was one of several claims that the Debtor had against the Affiliates and/or insiders.  The $1.3 million was subject to a separate $4.5 million intercompany receivable claim by the Debtor against the Affiliates.  The Court at the initial hearing on the Debtor's first disclosure statement held on April 6, 2010, raised the issue of the Debtor's proposed settlement of the $4.5 million intercompany receivable for $1.3 million when the Debtor was actually entitled to recover the full amount.  The Disclosure Statement was then modified to explain that the $1.3 million was given to the Debtor in partial satisfaction of the $4.5 million intercompany receivable obligation owed by the Affiliates to the Debtor and the proposed settlement was to resolve any potential litigation over collection of the $4.5 million intercompany receivable, how such receivable would be allocated among the Affiliates, the various defenses that may be asserted by the Affiliates, and the need to substantively consolidate the various Affiliates.  Disclosure Statement, at 13.  Without the settlement with the Affiliates, the collection of the intercompany receivable would have resulted in costly litigation that could have decreased the amount available for distribution to creditors. There was no reference made to include causes of action against the Defendants with respect to

preferences or avoidance actions.

If any consideration was given by some of the Defendants, it would be the release of any claims they may have as equity holders of the Affiliates to the remainder of the $1.3 million after the obligations of the Affiliates were satisfied in the winding up process. In light of the $4.5 million intercompany receivable due to the Debtor, it is unclear whether there would have been any equity left for the equity holders. Moreover, Bernice Futter, Lyn Gaylord and David Kirkham, although insiders either by their relationship to the principals or as an officer of the Debtor, were not equity holders of the Affiliates. So, the argument that the Defendants gave up their claim to the $1.3 million held by the Affiliates in exchange for releases from all claims by the Debtor fails because some of the Defendants did not have any interest in the $1.3 million held by the Affiliates. Accordingly, the $1.3 million cannot be deemed to be consideration for resolution of any potential preferential or avoidance actions against the Defendants that could have been brought by the Debtor or the Trustee.

Indeed, this interpretation is consistent with the section of the Disclosure Statement notifying creditors that the causes of action relating to the payments listed in question 3 of the Debtor's Statement of Financial Affairs were specifically preserved and transferred to the Liquidation Trust as discussed above. If the principals had also sought to obtain a release of potential preference and avoidance actions against the Defendants when they sought to resolve the intercompany receivable and agreed to reduce their claims against the Debtor's estate, then such a release was never expressly obtained nor was such agreement ever disclosed or reflected in the Plan, which is the controlling document. If the resolution of the Trustee's claims against the Defendants were important to the funding of the Plan, then one would anticipate that not only

18

the Disclosure Statement but also the Plan would contain specific release language not only for

Bernard and Kenneth Futter but also for the Defendants.  Yet both the Plan and Disclosure

Statement do not contain any specific release for the named Defendants.  Rather, these

documents provide that as part of the consideration for the express releases given to Bernard

Futter and Kenneth Futter as officers and directors of the Debtor, their general unsecured claims

against the bankruptcy estate would be reduced by an aggregate of $150,000.  Accordingly, it is

unlikely that the principals' reduction of general unsecured claims constituted consideration for a

release of the Trustee's causes of action against the Defendants because Bernard and Kenneth

Futter still have general unsecured claims totaling more than 1.8 million against the Debtor's

assets after their claims have been reduced while the Trustee seeks approximately $1.1 million

from the Defendants.  Moreover, there is no evidence that Defendants ever gave any separate

consideration for a release of Trustee's preference and avoidance causes of action against them.


Based upon the foregoing, the Court finds that there was no prior settlement of any

preference or avoidance action against the Defendants and that such actions were expressly

preserved.  The Defendants had notice of the possibility of the Trustee commencing such causes

of action post-confirmation.  Accordingly, the Trustee's causes of action against the Defendants

are not the same as those that were resolved with respect to the Affiliates as embodied in the

Disclosure Statement and Plan and the Trustee's Amended Complaint is not precluded by the

doctrine of res judicata.

With respect to the Defendants' argument that the Confirmation Order and the Plan must

be undone on the basis of mutual mistake if the Court were to find that the doctrine of res

judicata does not apply, section 1144 of the Bankruptcy Code provides that "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud." 11 U.S.C. § 1144. The Confirmation Order was entered on June 9, 2010, thus the 180-day period in which the Defendants can seek a revocation of the Confirmation Order has passed. Moreover, revocation of a confirmation order can only be allowed if it is based on fraud, not mistake. Thus, the fact that the principals, and/or the Defendants, may have misunderstood that the releases and the resolution of the Debtor's $4.5 million claim against the Affiliates in exchange for the $1.3 million to fund the Plan did not extend to the potential preference and avoidance actions against the Defendants, such misunderstanding does not rise to the level of fraud and cannot be a basis for revocation of the Confirmation Order.

## CONCLUSION

Based upon the foregoing, the Court finds that (1) there is no ambiguity in the Confirmation Order, the Plan and the Trust Agreement and to the extent there is any conflict with the Disclosure Statement, the terms of the Plan controls, (2) the Trustee's causes of action against the Defendants were specifically reserved and the Defendants had adequate notice of such reservation of the causes of action, and (3) the Disclosure Statement is consistent with the Plan in that there is no prior resolution or waiver of the causes of action brought by the Trustee against the Defendants in this adversary proceeding and the Defendants were never expressly granted a release from such causes of action. Accordingly, the Defendants' Motion to Dismiss the

Amended Complaint is denied.

So Ordered.



Dated: **Central Islip, New York**
       **November 8, 2011**

21

**Dorothy Eisenberg**
**United States Bankruptcy Judge**